## A10A0196. BROWN v. THE STATE.
### (694 SE2d 385)

PHIPPS, Presiding Judge.

In connection with a single incident, Frank J. Brown III was indicted for aggravated assault (with a gun), criminal attempt to commit armed robbery, carrying a concealed weapon, and possession of a firearm during the commission of a felony (aggravated assault). Following the grant of his motion for mistrial, which was based on the prosecutor's questioning of a state witness that resulted in Brown's character being improperly injected into evidence, Brown filed a plea in bar on double jeopardy grounds. The trial court denied the plea, and Brown appeals. We affirm.

> Where, as here, a mistrial is granted at the request of a criminal defendant, retrial is not prohibited on the basis of double jeopardy unless it is established that the State intended to goad the defendant into moving for a mistrial in order for the State to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial.[1]

Whether the prosecutor intended to goad the defendant into moving for mistrial calls for the trial court to "make a finding of fact by inferring the existence or nonexistence of intent from objective facts and circumstances."[2]

> When the trial court sits as the factfinder, its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous. A trial court's findings of fact will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them.[3]

> Brown's contention that he cannot be retried centers on the prosecutor's direct examination of a police officer who had investigated the underlying criminal incident. According to Brown, the state asked a series of questions that were intended to elicit impermissible evidence so prejudicial that it would provoke a mis-

---

[1] *Williams v. State*, 268 Ga. 488, 489 (491 SE2d 377) (1997) (punctuation and footnote omitted).

[2] *State v. Thomas*, 275 Ga. 167 (562 SE2d 501) (2002) (punctuation omitted) (citing *Oregon v. Kennedy*, 456 U. S. 667, 675 (102 SC 2083, 72 LE2d 416) (1982)).

[3] *Thomas*, supra at 168 (citations omitted).

trial motion.[4]

First, Brown complains that the prosecutor asked questions that allowed the officer to apprise the jurors that his conduct, shortly after the underlying criminal incident, rose to the level of being featured on an episode of the television show "America's Most Wanted." This line of inquiry was in connection with efforts by law enforcement to ascertain the identify of and then apprehend the perpetrator of the crimes. The officer recounted that, during his interview with the victim on the night of the incident, September 2, 2006, the victim named his assailant as "Frank James Brown, III." The officer recalled that, next, he composed a photographic lineup containing Brown's picture and that on September 5, 2006, the victim selected Brown's picture as that of the assailant; and with that additional identification, the officer immediately swore out an arrest warrant for Brown. But Brown was not arrested for more than two years. Upon further questioning by the prosecutor, the officer explained that, throughout 2007, various "leads" terminated at dead ends. By 2008, the officer considered that Brown may have fled the state; thus, Brown's case was given to the Georgia Bureau of Investigation, which in turn, forwarded materials from Brown's case to the television show. The officer testified that Brown's case was profiled on an episode broadcast in December 2008, and in less than a week, Brown was apprehended.

Brown's relevancy objections to testimony about the television broadcast were overruled. Notwithstanding, Brown maintained at the hearing on the plea in bar that the testimony was prejudicial and had been solicited as part of the prosecutor's campaign to goad the defense into seeking a mistrial. When the prosecutor was asked at the hearing on Brown's plea in bar to explain why she had embarked upon that line of inquiry, the prosecutor testified that she had presented that evidence to argue during closing that, shortly after the criminal incident, Brown was "on the lam" for over two years — flight, which, according to the state's theory, evinced Brown's guilt. The trial court noted its prior determination that the issue of flight was properly presented to the jury and accepted the prosecutor's explanation, thereby rejecting Brown's argument that the questioning demonstrated an effort to goad the defense into moving for a mistrial. The record shows that the trial court did not abuse its discretion in allowing the examination and testimony;[5] thus, the trial

[4] At the hearing on his plea in bar, Brown argued that the prosecutor intended to provoke a mistrial motion to prevent an impending acquittal and that a retrial would allow the state to call individuals not included on its witness list.

[5] See *Hogans v. State*, 251 Ga. 242 (1) (304 SE2d 699) (1983) (flight is a circumstance which may be shown and is conduct that a jury is authorized to take into account in

court correctly rejected Brown's argument that the cited part of the direct examination illustrated to some degree the prosecutor's intent to goad the defense into moving for a mistrial.[6]

Next, Brown cites questions asked by the prosecutor that resulted in responses that impermissibly impugned his character by apprising the jurors that he had been arrested before the underlying incident. After the first such instance,[7] Brown's attorney procured a bench conference. The conference was not transcribed, and no jury instruction followed therefrom. Rather, the prosecutor resumed direct examination of the officer. Delving into which case materials had been included in the package sent to the television show, the prosecutor asked, "What picture [of Brown] did you use?" The officer's response to that question further authorized the jurors to infer that Brown had been arrested prior to the underlying incident; and after another hearing outside the jury's presence, a mistrial was declared.

In overruling Brown's subsequent plea in bar, the trial court was guided by *State v. Traylor*.[8] Therein, the Supreme Court of Georgia reiterated:

> The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. . . . Unless the prosecutor is intentionally trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is the intent to terminate the trial, not the intent to prevail at trial by impermissible means.[9]

At the hearing on Brown's plea in bar, the prosecutor was asked to explain why she had asked that second question: "What picture [of Brown] did you use?" She explained that she had expected the officer to answer that the picture of Brown that had been sent to the television show was the same picture of Brown that had been included in the photographic lineup, from which Brown was identi-

---

determining guilt or innocence of an accused, and evidence thereof is not inadmissible because it incidentally puts the defendant's character in issue).

[6] See generally *Williams*, 268 Ga. at 491 (failure to show that, by introducing the contested evidence, the state intended to abort the prosecution authorized trial court to conclude that retrial of the defendant was not barred).

[7] The prosecutor asked, "Now, how are photographs — how did you compose this particular photographic lineup?" The officer responded, "My photographic lineup was composed of previous and past arrestees that we had within the department."

[8] 281 Ga. 730 (642 SE2d 700) (2007).

[9] Id. at 732 (citation and punctuation omitted).

fied by the victim as the assailant. Instead, the officer answered, "This was a picture received from Columbus police department."

The trial court criticized the prosecutor's question as "very poorly framed" and the officer's answer as displaying a "lack of sophistication in regards to testifying about the particular pictures and/or the lineup." Nevertheless, the trial court accepted the prosecutor's explanation, thereby rejecting Brown's argument. We conclude that the record contains evidentiary support for the trial court's determination that the cited part of the prosecutor's direct examination of the officer did not show that the prosecutor was intentionally trying to abort the trial.[10]

Brown persists, however, in arguing that the prosecutor failed to give adequate explanations at the hearing for asking at trial what he maintains were improper questions. He points out that, prior to the trial, the prosecutor had approximately ten years of experience in prosecuting cases; that she had tried approximately forty cases; that she admittedly knew that Brown had been arrested in Columbus; and that she admittedly had interviewed the officer about three or four times. Brown asserts that the prosecutor's intent to provoke a mistrial could properly have been inferred also from the fact that, after announcing her intent during the direct examination to show the officer a certain exhibit, the prosecutor paused, then remarked, "I'm anticipating an objection."[11] Brown cites *State v. Thomas*,[12] which affirmed the grant of a defendant's double jeopardy plea in bar in a case where the prosecutor had been a member of the bar for nine years, had tried numerous felony cases, and had given "inconsistent, unconvincing" explanations when asked why he had posed the question that precipitated the declaration of a mistrial in that case.[13]

Under the applicable "any evidence" standard of review, however, Brown has demonstrated no basis for reversal. The evidence authorized the trial court's determination that the complained-of inquiry by the prosecutor was not intended to goad the defense into seeking a mistrial; and nothing in *Thomas* mandates the grant of a double jeopardy plea in bar based upon the prosecutor's experience. While the record does show that the trial court declared a mistrial

---

[10] See generally *Roscoe v. State*, 286 Ga. 325 (687 SE2d 455) (2009).

[11] Notably, after the prosecutor made this remark, a bench conference ensued. Because the conference was not transcribed, we are unable to ascertain the extent to which the conference addressed or resolved the underpinnings of the prosecutor's anticipation of an objection. Brown asserts in his brief that, during the conference, he lodged and the trial court sustained an evidentiary objection. But, "factual assertions in briefs that are unsupported by the record cannot be considered in the appellate process." *Parker v. State*, 283 Ga. App. 714, 717 (2) (d) (642 SE2d 111) (2007) (citation and punctuation omitted).

[12] Supra.

[13] Id. at 167.

because it determined that the investigating officer's testimony had impermissibly impugned Brown's character, as *Traylor*[14] further instructs, "even if a detective intentionally frames his testimony on behalf of the State so as to goad the defense into seeking a mistrial, his instigative intent will not be imputed to the prosecutor."[15] Where, as here, the evidence authorized the trial court to find that the person in control of the prosecution did not instigate any such misconduct "either directly or through collusion in order to goad the defendant into moving for a mistrial, double jeopardy does not bar retrial."[16] The trial court did not clearly err in denying Brown's plea in bar.[17]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED APRIL 22, 2010 — ▮▮▮▮▮▮▮▮

*Benjamin A. Davis, Jr.*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

---

[14] Supra.

[15] Id. at 733 (citation omitted).

[16] Id. (citation omitted).

[17] See *Roscoe*, supra; *Traylor*, supra; *Williams*, supra, 268 Ga. at 490-491; *Dinning v. State*, 267 Ga. 879 (485 SE2d 464) (1997); *Williams v. State*, 258 Ga. 305, 312 (1) (A) (369 SE2d 232) (1988) (actions of the prosecutor constituting even intentional prosecutorial misconduct do not raise the bar of double jeopardy, notwithstanding the fact that the defendant was thereby deprived of due process of law, unless the prosecutor's actions were intended to subvert the protections afforded by the Double Jeopardy Clause).